```
            UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF WEST VIRGINIA
                     AT CHARLESTON
```

**UNITED STATES OF AMERICA**

v.                                              Criminal Action No. 2:10-00015-1

**BRIAN LEE CORBETT**

## MEMORANDUM OPINION AND ORDER

Before the court is defendant Brian Lee Corbett's Memorandum in Support of Request for Sentence Reduction for Extraordinary and Compelling Reasons (ECF No. 188), filed March 11, 2022.  Inasmuch as this memorandum asks the court to grant compassionate release, it is construed as a motion under 18 U.S.C. § 3582(c)(1)(A)(i).

The government filed a Response in Opposition (ECF No. 194) to the motion on April 20, 2022.  Corbett's reply memorandum (ECF No. 197) was filed with the court on May 5, 2022.

I.   Background

On May 19, 2010 defendant Brian Lee Corbett ("Corbett") pled guilty to Count One of a four-count indictment, which charged him with aggravated bank robbery in violation of 18 U.S.C. § 2113(a) and (d).  ECF No. 59.

Corbett's plea agreement (ECF No. 60) contained a "Stipulation of Facts," which provided that on December 8, 2009, Corbett entered Boone County Bank in Logan, West Virginia wearing a mask.  Therein he pointed two loaded handguns at the tellers and demanded money.  Corbett obtained approximately $33,000 before fleeing the bank.

According to the Presentence Investigation Report ("PSR") prepared in Corbett's case found, pursuant to the 2009 edition of the United States Guideline Manual, that the base offense level for the offense was 20.  PSR ¶¶ 29-30.  The following specific offense characteristic enhancements were applied:  (1) a two-level enhancement pursuant to U.S.S.G. § 2B1.3(b)(1) because the property of a financial institution as the object of the offense and was taken during the commission of the crime; (2) a six-level enhancement pursuant to U.S.S.G. § 2B1.3(b)(2)(B) because a firearm was used but not discharged during the commission of the offense; (3) a one-level

2

enhancement pursuant to U.S.S.G. § 2B1.3(b)(7)(B) because the loss amount was $33,781.  Id. at ¶¶ 31-33.

These enhancements resulted in subtotal of 29 points, however, in accordance with the criteria set forth in U.S.S.G. § 4B1.1(a), the Probation Officer recommended that Corbett be found a Career Offender.  Id. at ¶ 39.  The PSR stated, in pertinent part,

> the defendant is a Career Offender because: he is over the age of 18; the offense of conviction is a crime of violence; and he has a prior conviction for a crime of violence (aggravated robbery) and a felony controlled substance offense (conspiracy to distribute cocaine).

Id.  Designation as a career offender raised the adjusted offense level to 34.  Id.  After receiving a three-level reduction for acceptance of responsibility, the PSR calculated a Total Offense Level of 31.  Id. at ¶¶ 40-42.

Corbett's prior convictions resulted in a criminal history score of 9, which would have yielded a Criminal History Category of IV.  Id. at ¶ 49.  However, because Corbett had received the career offender designation, his Criminal History Category was raised to VI.  Id.

On November 11, 2010, Corbett appeared before United States District Judge Thomas E. Johnston for sentencing wherein

Judge Johnston adopted the PSR in whole.  Sentencing Tr. 4, 7; ECF No. 143.

Based on the Total Offense Level of 31 and Criminal History Category of VI, Corbett was subject to an imprisonment range of 188 to 235 months.  Judge Johnston sentenced Corbett to a term of imprisonment of 235 months to be followed by 5 years of supervised release.  Judgment, ECF No. 95.

According to the PSR, Corbett has been in federal custody since December 12, 2009.  PSR 1.  As of the current date, he has been incarcerated for more than 150 months.

Corbett's projected release date is November 22, 2026.  See Fed. Bureau of Prisons, Find an Inmate, https://www.bop.gov/inmateloc/ (last visited June 28, 2022).

## II.  Legal Standard

Generally, once a court has imposed a term of imprisonment, it lacks the authority to modify the sentence.  18 U.S.C. § 3582(c).  In December 2018, however, Congress enacted the First Step Act, which amended 18 U.S.C. § 3582 and enabled courts to reduce a term of imprisonment under certain circumstances.  First Step Act of 2018, Pub. L. No. 115–391, § 603, 132 Stat. 5194, 5239.

As amended, § 3582 provides that after satisfying an administrative exhaustion requirement,[1] courts may reduce a sentence if (1) "extraordinary and compelling reasons warrant such a reduction," (2) "reduction is consistent with the applicable policy statements issued by the Sentencing Commission," and (3) release is consistent with the factors listed under 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A).

The Fourth Circuit has clarified that at the current time there are no "applicable policy statements issued by the Sentencing Commission." See United States v. McCoy, 981 F.3d 271, 283 (4th Cir. 2020). Accordingly, the court is not limited by an enumerated list of reasons that warrant relief and "enjoy[s] broad discretion in conducting this analysis." United States v. Kibble, 992 F.3d 326, 330 (4th Cir. 2021).

III. Analysis

In United States v. McCoy, the Fourth Circuit addressed whether changes in sentencing law could support compassionate release under § 3582(c)(1)(A)(i). McCoy was a consolidated action considering motions for compassionate release brought by defendants who had been convicted of multiple

---

[1] Corbett submits that he has exhausted his administrative remedies with the Bureau of Prisons, and the government has not alleged a failure to exhaust.

5

offenses under 18 U.S.C. § 924(c).  McCoy, 981 F.3d 271, 275 (4th Cir. 2020).  Section 924, in relevant part, "imposes mandatory minimum sentences for using or carrying a firearm in connection with a crime of violence: for a first offense, a five- to ten-year mandatory minimum, depending on the circumstances; and for a subsequent conviction, a consecutive 25-year mandatory minimum.  Prior to the First Step Act, a conviction was treated as 'second or subsequent,' triggering the 25-year minimum sentence, even if the first § 924(c) conviction was obtained in the same case."  Id.  The First Step Act ended this practice of "stacking," and clarified that the 25-year mandatory minimum only applies to defendants who have previously been convicted under § 924(c) in a separate case.  Id.; § 403(a), 132 Stat. at 5222.

The McCoy defendants sought, and were granted, compassionate release at the district court level, and the United States appealed, arguing that disproportionately long sentences could not serve as "extraordinary and compelling" reasons warranting compassionate release.

The McCoy Court found that "the severity of the defendant's 924(c) sentences and the extent of the disparity between the defendants' sentences and those provided for under the First Step Act" were factors that could be considered as

6

part of the "extraordinary and compelling reasons" underlying compassionate release. Id. at 285. The court affirmed the grants of compassionate release, noting that the district courts had conducted "individualized inquiries," and had based relief not just on sentencing disparities but also on factors such as defendants' "relative youth at the time of their offenses, their post-sentencing conduct and rehabilitation, and the very substantial terms of imprisonment they already served." Id.

Relying on McCoy as persuasive authority, Corbett argues that extraordinary and compelling reasons exist that warrant release in his case. First, he argues that if he were sentenced today, he would not be classified as a career offender and thus would be subject to a shorter sentence.

Pursuant to the United States Sentencing Guidelines, a defendant is classified as a career offender if,

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). If the career offender designation applies, the Guidelines provide that the defendant's Criminal History Category shall be Category VI. U.S.S.G. § 4B1.1(a).

Additionally, Section 4B1.1(b) provides for an enhancement in the defendant's Total Offense Level based upon the statutory maximum for the offense of conviction.

At the time of his sentencing, Corbett met all the criteria for career offender designation. He was 34 years old, his crime of conviction was a felony crime of violence, and he had two prior felony offenses that were considered either a crime of violence or a controlled substance offense. The two predicate offenses underlying Corbett's enhancement were a 1993 conviction for Aggravated Robbery out of the Circuit Court of Logan County, WV, and a 2003 conviction for Conspiracy to Distribute Cocaine in violation of 21 U.S.C. § 846 out of this court. See PSR ¶¶ 39, 44, 48.

Since Corbett's sentencing, however, the Fourth Circuit has held that the offense of conspiracy to distribute drugs under 21 U.S.C. § 846, being that for which he was sentenced, is not a "controlled substance offense" under the Guidelines. United States v. Norman, 935 F.3d 232 (4th Cir. 2019).[2] Accordingly, if sentenced today, Corbett's 2003

---

[2] In Norman, the court concluded that conspiracy under § 846 does not qualify as a controlled substance offense because it does not require an overt act and thus "criminalizes a broader range of conduct than that covered by generic conspiracy." 935 F.3d at 237–38.

8

conviction would not be considered a controlled substance offense, and Corbett would not meet the third criterion for designation as a career offender.

At Corbett's sentencing hearing, Judge Johnston noted on the record that if the career offender enhancement had not applied, Corbett's Total Offense Level would have been 26, and his Criminal History Category would have been IV. Sentencing Tr. 7–8. Thus, without the enhancement, the relevant advisory sentencing range would have been 92 to 115 months, rather than 188 to 235.[3]

Second, in addition to the disparity between the sentence he received and the one he believes he would receive if sentenced today, Corbett submits that his record while incarcerated also supports a reduction in his sentence. Corbett states that he has "taken advantage of educational opportunities to improve himself and prepare for release." ECF No. 188, at 9. During his period of incarceration, he has taken numerous classes including classes related to employment, computer usage, parenting, and release preparation. Id.; Summary Reentry Plan, ECF No. 188-1. Additionally, he has completed vocational

---

[3] Corbett's memorandum suggests that the applicable range would be 95 to 115 months, but the range provided by the Sentencing Table, both in at the time of his sentencing and today, is 92 to 115 months.

9

training including a Commercial Divers License class, a Residential Construction class, and a Masonry program. Summary Reentry Plan 2.

Corbett has obtained work experience while incarcerated, working in UNICOR, Food Service and as an orderly. Id. at 1. He also completed the Non-Residential Drug Abuse Program in 2021. Id. at 3.

Corbett concedes that he has sustained disciplinary infractions since his arrival in BOP custody but submits that "only one of those infractions occurred in the past six years and the most serious occurred nearly nine years ago." ECF No. 188, at 9. Corbett claims that his improved conduct indicates that he has matured during his time in prison and "has shown an ability to live within the rules required of him[.]" Id.

The court notes that ten of Corbett's sixteen disciplinary infractions were for mail or phone abuse. Summary Reentry Plan 12. His other infractions include possession of unspecified unauthorized items in 2010, 2011, and 2012; possession of a dangerous weapon in 2013; and refusing work and refusing an order in 2016. Corbett's only infraction since 2016 was for mail abuse in October of 2021.

The government agrees that if sentenced today, Corbett would not be a career offender. Still, it argues that Corbett "nevertheless fails to meet the heightened standard of extraordinary and compelling reasons for relief, as required by § 3582(c)(1)(A)(i)." ECF No. 194, at 5.

The United States argues that the intervening change in career offender predicate offenses is not an extraordinary and compelling reason for compassionate release. Id. at 5–11. This argument, however, is unavailing. Several judges in this district, including the undersigned, have found that this change in sentencing law can be a factor in favor of a finding of extraordinary and compelling circumstances that warrant release under § 3582. See United States v. Browning, No. CR 2:98-00134, 2022 WL 1787133 (S.D.W. Va. June 1, 2022) (Copenhaver, J.); United States v. Johnson, No. CR 3:11-00054, 2022 WL 1510544 (S.D.W. Va. May 12, 2022) (Chambers, J.); United States v. Minter, No. 2:12-CR-00191, 2021 WL 1894454 (S.D.W. Va. May 11, 2021) (Goodwin, J.); United States v. Vaughn, No. 5:08-CR-00266, 2021 WL 136172 (S.D.W. Va. Jan. 13, 2021) (Volk, J.).

In this case, the court finds that the disparity between the sentence Corbett received and the one he would have received had he not been designated as a career offender, combined with his rehabilitative record while incarcerated,

11

supports a finding of extraordinary and compelling circumstances that warrant release under § 3582.

Additionally, the court finds that a grant of compassionate release in this case is consistent with the factors enumerated in 18 U.S.C. § 3553(a), as required by 18 U.S.C. § 3582(c)(1)(A).

Section 3553(a) requires the court to impose a sentences that is "sufficient, but not greater than necessary" to comply with the need for the sentence (1) "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; (2) to afford adequate deterrence to criminal conduct"; (3) "to protect the public from further crimes of the defendant;" and (4) "to provide the defendant with needed education or vocation training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a).

A sentence of time served, after more than 150 months, sufficiently reflects the seriousness of Corbett's crime, promotes respect for the law, and is a just punishment that adequately serves the purposes of specific and general deterrence.

Although the government aptly argues that the circumstances of Corbett's crime and his criminal history, which it describes as "extensive and violent," weigh heavily against release, the court notes Corbett has served nearly three years more than the top of the 92 to 115 months guideline range he would be exposed to if sentenced today, a guideline range that would be based upon the characteristics of his crime and the extent of his criminal history.

Although Corbett's PSR indicates that he was convicted of a serious violent offense in 1991, the court notes that he was only 15 years old at the time of that conviction.  PSR ¶ 44. The only other instance of violence apparent in Corbett's record is the 2002 conviction for Destruction of Property, the basis of that conviction being that Corbett kicked in the door of another's residence.  Id. at 46.[4]

Corbett is now 46 years old and has been incarcerated for the instant offense for twelve and a half years.  While his institutional record is not spotless, it is does not evince acts of violence.  Moreover, Corbett's only significant prison violation occurred nine years ago.  His behavior since that time

---

[4] Corbett's PSR indicates that he was charged with domestic assault and domestic battery in 2002, however those charges were dismissed "for lack of sufficient evidence to prosecute."  PSR ¶ 54.

13

suggests that he has matured and taken steps toward rehabilitation.

Finally, Corbett has taken advantage of vocational and educational programing while incarcerated, completed a drug abuse program, and taken classes geared toward release preparation.  The court finds that further incarceration is not needed to provide him vocational training or rehabilitative treatment.

Inasmuch as the court is satisfied that compassionate release is consistent with the factors set forth in § 3553(a), it finds that Corbett is entitled to relief under § 3582(c).  Accordingly, his motion for compassionate release, as supported by the memorandum filed on March 11, 2022, is granted.

### IV.  Conclusion

In light of the foregoing, the court ORDERS as follows:

1.   Corbett's motion for compassionate release, as presented within his Memorandum in Support of Request for Sentence Reduction for Extraordinary and Compelling Reasons (ECF No. 188), be, and hereby it is, granted.

2.   Corbett's sentence is reduced to time served.

3. All other terms of the judgment order entered November 8, 2010 (ECF No. 95) remain unchanged, including the 5-year term of supervised release and order of restitution.

4. The Bureau of Prisons shall release Corbett within 10 days of this order.

The Clerk is directed to transmit copies of this order to the defendant and all counsel of record, the United States Probation Office, the United States Marshal, and to the Federal Bureau of Prisons.

ENTER: June 30, 2022

John T. Copenhaver, Jr.
Senior United States District Judge